1  PAMELA J. NAUGHTON, Cal. Bar No. 97369
   THOMAS B. SNYDER, Cal. Bar No. 211230
2  SHEPPARD MULLIN RICHTER & HAMPTON LLP
     A Limited Liability Partnership
3     Including Professional Corporations
   12275 El Camino Real, Suite 200
4  San Diego, California  92130
   Telephone:   858-720-8900
5  Facsimile:    858-509-3691

6  Attorneys for
   JEFFREY W. BRZOSKA

7

8

9

10

11                    UNITED STATES DISTRICT COURT

12                   CENTRAL DISTRICT OF CALIFORNIA

13

14  UNITED STATES OF AMERICA,          Case No. 11-CR-00142-DOC

15              Plaintiff,             **DEFENDANT JEFFREY WAYNE
                                       BRZOSKA'S SENTENCING
16        v.                           MEMORANDUM**

17  JEFFREY WAYNE BRZOSKA,             Sentencing Date:  May 7, 2012
                                       Sentencing Time: 7:30 a.m.
18              Defendant.

19

20

21

22

23

24

25

26

27

28

# SENTENCING MEMORANDUM

## I.

## INTRODUCTION

On August 22, 2011, Jeffrey Brzoska, a 38 year old first time offender, pled guilty to a single count information charging him with conducting an illegal gambling business under 18 U.S.C. § 1955(a). Mr. Brzoska entered his guilty plea to the information pursuant to a written plea agreement with the government.

From the outset, Mr. Brzoska has accepted full responsibility for his criminal activity and has done everything possible to make amends. As discussed in the materials filed by the United States, Mr. Brzoska has fully cooperated with the government from the first day the agents contacted him. Moreover, in searching his house, the United States seized $105,349.33 in currency, much of which Mr. Brzoska had earned from legitimate business endeavors. Nevertheless, Mr. Brzoska agreed to forego any claim to the return of any of that money as part of his acceptance of responsibility and did not object to the entry of judgment against him. See United States v. $105,349.33 in United States Currency and Bank Funds, 11-CV-1482-RSWL.

Mr. Brzoska is ashamed and devastated by his involvement in this criminal activity for which he accepts complete responsibility. He has **no prior record** and is a college graduate. As the probation office's Presentence Investigation Report ("PSR") and the attached letters of support for Mr. Brzoska make clear, Mr. Brzoska's behavior in this case stands in stark contrast to the way he has lived his entire life and is an anomaly in a lifetime marked by dedication to his family, his friends and his community. It is striking that these letters come from individuals who have known Mr. Brzoska at all stages of his life, from childhood through today. At every stop in his life journey, there are many

-1-

1   people who count themselves fortunate to have encountered Jeffrey Brzoska.  He is a

2   loving son and brother who has helped his mother and family through serious illnesses.  He

3   is a generous employer who has gone above and beyond what was required for the benefit

4   of his employees.  He is a good friend and neighbor who has dedicated his time and money

5   to those in need with no financial compensation.  He is dedicated to his community,

6   volunteering countless hours to youth programs in Park City, Utah.  He is a good man,

7   who made a bad decision.

8

9        Mr. Brzoska respectfully requests that the Court consider all of the relevant

10  factors of 18 U.S.C. § 3553(a) – including the nature of the offense, Mr. Brzoska's life-

11  long record of honesty and integrity, his dedication to his community and his current

12  positive role in the lives of the people of Park City and the serious collateral consequences

13  he has already suffered – and conclude that a custodial prison term would be punishment

14  greater than necessary to accomplish the statutory purposes of sentencing in this case.  It is

15  therefore respectfully requested, in accordance with the recommendation of the PSR, that

16  Mr. Brzoska be sentenced to a term of probation.

17

18                                 **II.**

19                    **BACKGROUND OF THE OFFENSE**

20

21        Jeff Brzoska has been a scholastic athlete and lifelong sports fan.  Starting in

22  or about 2004, Mr. Brzoska began placing bets on sporting events through an acquaintance

23  who ran a "sports book." Mr. Brzoska engaged in betting as a hobby while he was

24  employed as manager of the settlements division of Pimco.  Over time he also referred

25  several friends who were interested in sports betting.  After several years, Mr. Brzoska had

26  referred many players when the acquaintance found himself facing unrelated charges.  Mr.

27  Brzoska took over running the business with his players.  This was a foolish and misguided

28  decision, one that would come to impact the rest of Mr. Brzoska's life.

-2-

1        Mr. Brzoska's role in the business was to accept bets from customers.  The

2   bets were booked through an offshore sports book located in Costa Rica.  Bets were

3   usually taken on credit, meaning no money was paid up front.  Once the sporting event

4   took place, Mr. Brzoska would then settle up with the bettors, collecting money from the

5   losing bettors and paying out money to the winners.  However, unlike the caricature of an

6   illegal gambling business where the bookmaker has a hired goon to threaten losing

7   gamblers into paying their debts, Mr. Brzoska did no such thing.  He took no action to

8   force any losing bettors to pay up on their bets and never "strong armed" anyone into

9   paying.  Rather, if a losing bettor could not or would not pay, Mr. Brzoska would simply

10  write off the debt and move on.  This resulted in Mr. Brzoska sometimes having to pay

11  winning bettors and collect nothing from losing bettors.  While Mr. Brzoska did generate

12  money from the business, it was not particularly lucrative because of Mr. Brzoska's failure

13  to collect losing bets.  Both winners and losers described Jeff Brzoska as a "really nice

14  guy" to the case agent.

15

16        Not long after he began his involvement as the operator of the business, Mr.

17  Brzoska began spending time in Park City, Utah because of a personal relationship.  In

18  2007, he decided to gradually turn over the gambling operation to someone else.  Scott

19  Murphy, an associate of Brzoska's who was already involved in the business, began to take

20  over more and more of the operation while Brzoska was phasing out his involvement.  Mr.

21  Brzoska planned to relocate to Park City permanently, get married and start a family.  He

22  was detained before he could completely end his involvement in the business.

23

24        Mr. Brzoska was detained in December 2008 under unusual circumstances.

25  Mr. Brzoska met with a customer outside a restaurant in Newport Beach, California.

26  Coincidentally, two law enforcement officers happened to be leaving the restaurant at the

27  same time.  The officers observed Mr. Brzoska giving the man an envelope.  The officers,

28  apparently believing they were witnessing a drug deal in progress, followed Brzoska's car

-3-

1   and made a traffic stop.  They drew their weapons and ordered him out of the car.  They

2   handcuffed him and then requested consent to search his vehicle.  Mr. Brzoska consented

3   to the search and explained that he was not a drug dealer, but a bookmaker who was

4   simply paying off a winning bet.  Mr. Brzoska immediately and fully cooperated with the

5   local officers and continued to cooperate with federal authorities in the subsequent

6   investigation by providing everything requested.

7

8           Mr. Brzoska's sports book was not a large gambling enterprise.  It consisted

9   mostly of friends and friends of friends.

10

11                                          **III.**

12                          **SENTENCING POSITION**

13

14  A.       Applicable Legal Principles

15

16          In the wake of the Supreme Court's decisions in *United States v. Booker*, 543 U.S.

17  220 (2005); *Kimbrough v. United States*, 128 S.Ct 558 (2007); and *Gall v. United States*,

18  128 S.Ct 586 (2007), the United States Sentencing Guidelines "are no longer mandatory

19  but are only advisory."  *United States v. Carty*, 520 F.3d 984, 990 (9th Cir. 2008).  *Booker*

20  and its progeny "empowered district courts, not appellate courts . . . [and] breathe[d] life

21  into the authority of district court judges to engage in individualized sentencing."  *United*

22  *States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008).

23

24          The overarching statutory charge for a district court is to "impose a sentence

25  sufficient, *but not greater than necessary*" to comply with the sentencing purposes of

26  punishment, deterrence, protecting the public from further crimes of the defendant, and

27  providing the defendant with needed educational, medical, or other correctional treatment

28

-4-

DEFENDANT JEFFREY WAYNE BRZOSKA'S
SENTENCING MEMORANDUM

1  in the most effective manner.  18 U.S.C. § 3553(a). According to the statute, in making this
2  determination, the Court must consider

3

4      a)    the nature and circumstances of the offense and the history and
5                  characteristics of the defendant;

6      b)    the need for the sentence imposed to achieve each of the enumerated
7                  purposes of sentencing;

8      c)    the kinds of sentences available;

9      d)    the applicable statute, guideline range and policy statements; and

10      e)    the need to avoid unwarranted sentence disparities among similarly
                  situated defendants.
11  *Id.*

12      The Ninth Circuit in *Carty* set forth the principles that emerge from *Booker* and its
13  progeny:  "All sentencing proceedings are to begin by determining the applicable
14  Guidelines range."  520 F.3d at 991.  "The district court may not presume that the
15  Guidelines range is reasonable."  *Id.*  "Nor should the Guidelines factor be given more or
16  less weight than any other."  *Id.*  "While the Guidelines are to be respectfully considered,
17  they are one factor among the § 3553(a) factors that are to be taken into account in arriving
18  at an appropriate sentence."  *Id.*  "The district court must make an individualized
19  determination based on the facts."  *Id.*

20

21  B.    <u>Sentencing Guidelines Analysis</u>

22

23      The first step in the Court's sentencing analysis is determining the applicable
24  Guidelines range.  The applicable guidelines, as set forth in the Plea Agreement, are not in
25  dispute.  U.S.S.G. § 2E3.1 applies to a violation of 18 U.S.C. § 1955 and results in a Base
26  Offense Level of 12.

27

28

DEFENDANT JEFFREY WAYNE BRZOSKA'S
SENTENCING MEMORANDUM

1    Mr. Brzoska has agreed to and accepted a four level increase arising from his role as

2  an organizer or leader under U.S.S.G. § 3B1.1, resulting in an adjusted offense level of 16.

3

4    Mr. Brzoska has earned a three level decrease in the offense level for his acceptance

5  of responsibility under U.S.S.G. § 3E1.1(a) and (b).  Mr. Brzoska waived indictment,

6  quickly pled guilty in this case to an information, and immediately provided full

7  cooperation to the case agents and prosecutor.  He agreed to withdraw any claim to the

8  $105,349.33 seized by the government and forfeit those funds to the United States.

9  Pursuant to the plea agreement, the United States has agreed to move for the third point

10 reduction for acceptance of responsibility and Mr. Brzoska anticipates they will abide by

11 the plea agreement in this regard.  This decrease results in an adjusted offense level of 13.

12

13    As set forth in the separate papers filed under seal by the United States (and not

14 reflected in the PSR's calculation), Mr. Brzoska has earned an additional three level

15 reduction under U.S.S.G. § 5K1.1.  This results in a Total Offense Level of 10.

16

17    There is no dispute that Mr. Brzoska's criminal history category is I and he has no

18 points.  Offense level 10, Criminal History Category I is in Zone B and results in an

19 advisory Guideline range of 4-10 months.

20

21    Under U.S.S.G. § 5B1.1, a sentence of probation is expressly authorized for an

22 offense in Zone B if the court imposes a condition or combination of conditions which

23 includes community confinement or home detention.  Here, the Guidelines expressly

24 authorize a sentence of probation with 4 months of home confinement as a condition of

25 probation.  While the Guidelines are now one factor among many, the fact that the

26 Guidelines expressly authorize a probationary sentence is significant.  There is nothing in

27 the Section 3553(a) factors discussed below that supports anything other than a sentence of

28 probation.

W02-WEST:DTH\404858803.2

DEFENDANT JEFFREY WAYNE BRZOSKA'S
SENTENCING MEMORANDUM

1     Before turning to the Section 3553(a) factors discussed below, it is important to

2  note that the PSR calculated Mr. Brzoska's offense level as 13 with an advisory sentencing

3  range of 12-18 months in Zone D.  Of course, the probation officer did not have the benefit

4  of the United States' sentencing papers and the corresponding downward adjustment under

5  U.S.S.G. § 5K1.1.  **Nevertheless, the Probation Officer still recommended a sentence**

6  **of probation** with six months of home confinement for Mr. Brzoska based on the

7  substantial mitigating factors set forth in the PSR.  This adjustment is the equivalent of an

8  additional three level downward adjustment in the Guidelines based on Mr. Brzoska's

9  particular circumstances and the circumstances of the crime.  If that adjustment were

10  applied to the new guideline calculation that takes into account the adjustment under

11  U.S.S.G. § 5K1.1, the total offense level of 10 would be reduce to level 7, resulting in an

12  advisory guideline range of 0-6 months in Zone A.  For offenses in Zone A, the Court is

13  expressly permitted to impose a sentence of probation without any requirement for home

14  detention.  Mr. Brzoska submits that the Probation Officer's recommendation of probation

15  was the correct recommendation even if the Guidelines were at level 13.  Given that the

16  proper offense level is 10, the sentence of probation recommended by the Probation officer

17  is even more fully justified.

18

19  C.     A Sentence Of Probation Is The Appropriate Sentence To Accomplish The

20         Statutory Purposes In Section 3553(A)

21

22     As noted above, after determining the appropriate Guidelines range, the Court must

23  focus on the factors set forth in 18 U.S.C. § 3553(a), and impose a sentence sufficient, but

24  not greater than necessary, to comply with the purposes set forth in that statute.  "While the

25  Guidelines are to be respectfully considered, they are one factor among the § 3553(a)

26  factors that are to be taken into account in arriving at an appropriate sentence."  *United*

27  *States v. Carty*, 520 F.3d 984, 990 (9th Cir. 2008).  Application of the relevant factors of

28  § 3553(a) to this case makes clear that a sentence of incarceration is greater than necessary

-7-

to comply with the purposes set forth in that statute.  Given that the Guidelines support a sentence of probation, there is nothing in the Section 3553(a) analysis that supports a different conclusion.

        *1.*      *The Nature And Circumstances Of The Offense Conduct Militate In Favor Of A Probationary Sentence*

Mr. Brzoska broke the law when he took part in a gambling business which took wagers on sporting events.  He should have never participated in the venture and knew that gambling of this sort was illegal.  That is why Mr. Brzoska pled guilty, cooperated with the authorities, forfeited any claim he had to over $100,000 seized by the government and accepted responsibility for his actions.  While the commission of the crime was an aberration in light of Mr. Brzoska's character and law abiding life, his acceptance of responsibility for his conduct and the consequences of his decisions is exactly what one would expect from the man described in the multitude of recommendations and letters of support filed by friends, family members, former employees and others.

Mr. Brzoska has established a new and productive life.  He has moved to Utah, been gainfully employed in construction and real estate, and become an active part of the community in Park City.  He plans to get married and start a family, although his wedding date is on hold pending the resolution of this case.  He has been under the supervision of the Probation Department in Utah for almost one year and has been a model probationer.

The Court, should consider the following with respect to the nature and circumstances of the offense:

        1.      Mr. Brzoska did not harm anyone in the operation of this gambling business;

-8-

2.      Mr. Brzoska never strong-armed any losing bettor into paying and instead simply "wrote off" the debts;

3.      Mr. Brzoska was already diminishing his involvement in the operation at the time he was arrested;

4.      Mr. Brzoska cooperated fully with the arresting officers and admitted his involvement in the gambling business as soon as he was questioned;

5.      Mr. Brzoska continued to cooperate with the government after his arrest;

6.      Mr. Brzoska agreed to forfeit over $100,000, a portion of which came from rental properties he operated unrelated to his gambling business; and

7.      There were no identifiable victims in this case (and therefore no applicable restitution).

Based on the above, this category weighs heavily toward a non-custodial sentence.

*2.      The History And Characteristics Of The Defendant Also Support A Probationary Sentence.*

By now, the Court is well aware of Mr. Brzoska's background and history. Mr. Brzoska is a first-time, nonviolent offender, with an exemplary background. Mr. Brzoska is a loyal, dedicated and loving fiancée, brother and son who has had a positive impact on numerous other people's lives from family members to employees to friends to the boys on the lacrosse teams he coaches. There is absolutely nothing in Mr. Brzoska's background that justifies, much less requires, a sentence of incarceration. In fact, it speaks volumes

-9-

1  that the lacrosse association for whom Mr. Brzoska works is fully aware of this pending

2  criminal case and nevertheless fully supports him and wants nothing more than Mr.

3  Brzoska to remain available as part of their coaching staff.  As unfortunate as Mr.

4  Brzoska's choices were to engage in this illegal enterprise, it would be even more

5  unfortunate to the community of Park City to interrupt Mr. Brzoska's good and charitable

6  works and positive influences unanimously confirmed by his many letters of

7  recommendation.  This factor also weighs heavily toward a non-custodial sentence.

8

9        3.       *A Prison Sentence Is Not Necessary To Reflect The Seriousness Of The*

10              *Offense, To Promote Respect For The Law Or To Provide Just Punishment*

11              *For The Offense.*

12

13       It is somewhat ironic that this sentencing is scheduled in the shadow of "March

14  Madness" when thousands if not millions of office workers around the United States

15  "gamble" on the NCAA men's and women's basketball tournaments.  The FBI estimates

16  that approximately $2.5 billion is wagered on this tournament each year.  Mr. Brzoska ran

17  a business that took bets on sporting events.  Without minimizing the seriousness of the

18  offense, what Mr. Brzoska did was not very different from what was happening all over

19  the country barely over one month ago.  While gambling can lead to personal addictions,

20  for a majority of society, it is largely a victimless pastime.  The seriousness of the offense

21  does not require or even support any sentence of incarceration.

22

23       Nor is a prison sentence required to promote respect for the law or to provide just

24  punishment.  As noted in the PSR, Mr. Brzoska has pled guilty, cooperated with the police

25  at the outset, continued to cooperate with the government, withdrew any claim to the

26  $100,000 seized by the government, was cooperative with the Probation Officer, and has

27  demonstrated complete acceptance of responsibility for his actions.  The fact that he has no

28

-10-

prior criminal record and has fully complied with the conditions of his pre-trial release also reflects his respect for the law.

As for punishment, Mr. Brzoska has already paid a high price for his misconduct. He has gone through the monetary and emotional pain of this criminal prosecution that threatened his freedom and adversely impacted his plans to get married and start a family. He has suffered and will continue to suffer the indignity and shame of being a criminal, and has endured the stress and humiliation of being known as a accused felon.  To his credit, Mr. Brzoska has not allowed this public shame to dissuade him from fully participating in the community, even though it means publishing his status as an accused felon for all to see.   It is a testament to his character that he chose to face his public shame and commit to helping the community when it would have been far easier to isolate himself and avoid that exposure.  This Court may rest assured that Mr. Brzoska has already been sufficiently punished for his crime.

> 4.    *There Is No Need For Additional Deterrence Or To Protect The Public From*
>        *Further Crimes By Mr. Brzoska.*

There is no concern about protecting the public from further crimes by Mr. Brzoska. The crime here is a first time offense.  Since his arrest, Mr. Brzoska has been fully cooperative with the authorities, has remained in compliance with his conditions of pre-trial release and has not committed any further crimes.  He has physically removed himself from his former customers and associates and developed new and positive friendships and relationships.  This factor also supports a sentence of probation.[1]

---

[1] The remainder of the Section 3553(a) factors are either neutral or inapplicable.

-11-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IV.

## CONCLUSION

Even before taking into account the adjustment under U.S.S.G. § 5K1.1, the Probation Officer recommended that a sentence of probation with home confinement was the appropriate sentence.  Incorporating the additional adjustment under U.S.S.G. § 5K1.1 and the same downward adjustment recognized by the Probation Officer fully supports a sentence of **probation with no home confinement**.  The relevant factors under 18 U.S.C. § 3553(a) as discussed above and in the PSR, fully support a sentence of probation.  It is the just and appropriate sentence in this case.  Any sentence of incarceration is greater than necessary to serve the purposes of Section 3553(a).  Accordingly, Mr. Brzoska respectfully requests that the Court impose a sentence of probation.

Dated:  May 2, 2012

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
                  /s/ pjn
                  PAMELA J. NAUGHTON

Attorneys for Defendant
JEFFREY WAYNE BRZOSKA

-12-

W02-WEST:DTH\404858803.2

DEFENDANT JEFFREY WAYNE BRZOSKA'S
SENTENCING MEMORANDUM



Chad T. Orsatti,
J.D., M.B.A.

*of Counsel*
David J. Wollinka, Esq.

# ORSATTI
## & ASSOCIATES, P.A.
### ATTORNEYS AT LAW

3204 Alternate 19 North
Palm Harbor, Florida 34683
727.772.9060 Telephone
727.771.8800 Facsimile
www.orsattilaw.com

November 11, 2011

### *VIA FACSIMILE (435) 615-7010*

The Honorable David O. Carter
United States District Judge

RE:   Jeffery W. Brzoska

Dear Judge Carter:

I have had the privilege of knowing Jeffery Brzoska for over fifteen (15) years as both a dear friend and, as a client. I have also had the pleasure of meeting and getting to know his family during this time as well.

At all times I have found Jeff to be a dependable, honest and conscientious person of unquestionable moral character. Jeff is a dedicated, family and community-oriented individual who regularly puts the needs of other before his own. This is best evidenced by his dedication to caring for and providing for his family and his substantial commitment to and involvement in youth sports in the Park City, Utah area.

Upon learning of the charge against Jeff, it immediately struck me as a complete uncharacteristic aberration. In fact, I have had the opportunity to speak with Jeff on numerous occasions about the incident and he has repeatedly expressed regret for the transgression and I believe he is prepared to take responsibility for his actions and successfully move beyond the incident. I have every confidence that Jeff will graciously apply the lessons learned from this experience and will not repeat the same mistake.

I proudly make this recommendation on Jeff's behalf and will gladly make myself available to the Court should any verification of this statement be required.

Respectfully,

Chad T. Orsatti, Esq.

**Michael and Jolene Nielsen**
**3322 Daneborg Drive**
**Cottonwood Heights, Utah 84121**

The Honorable David O Carter
United States District Court
Central District of California

Your Honor,

The purpose of this letter is to provide you with our history and experience regarding the
character of Jeff Brzoska.  We have known Jeff for several years.  We speak to him or see
him several times a week.  Our relationship with Jeff is more than just a friendship.  We
truly love him and have counted on him on many occasions as if he was part of our
family.

In 2009, my wife was diagnosed with breast cancer and I am 66 years old and suffer from
diabetes with the added complications of minor strokes and heart problems.  During these
past few years Jeff has driven over 30 miles from Park City, Utah to our home in Salt
Lake City whenever we have needed him.  My wife was very sick with her radiation
therapy and I was not able to assist her as much as I would have liked.  Jeff was always
there when we needed his assistance whether it was yard work, snow removal, repairs
around the house; Jeff has always been there for us.  We have grown to love Jeff like a
son and in many cases he has been more than a son to us.

We are very concerned that we may lose Jeff due to the problem he has with our
Government.  I hope that you will allow Jeff to continue to assist us and that justice will
be given to Jeff with a kind and forgiving hand.

Sincerely,

*Jolene Nielsen*

Jolene Nielsen

Michael Nielsen

NICK SEIFERT
3105 FAIRWAY HILLS CT.
PARK CITY, UT 84060
435-640-9869

November 10, 2011

To The Honorable David O. Carter:

It is a pleasure to write a letter on behalf of Jeff Brzoska, who has coached one of our 7th/8th-grade boys lacrosse teams in Park City, UT for the past two seasons. He has been a tremendous asset to our program, and I've been impressed with his commitment, his abilities, and the standards he's set for our players.

When I first met Jeff, while interviewing him for the coaching position, he made it very clear that he didn't expect compensation; he simply wanted to give back to the community. We expect a significant commitment: 12-14 hours a week for about 14 weeks in the spring and again in the fall. He rarely has had to miss a practice and has never been late, and he gladly drives the 2-3 hours roundtrip to games in Salt Lake City every Saturday during the season.

Jeff has been a big hit among our Park City Lacrosse organization, its parents and especially the players. In his first season, Jeff took a team of primarily beginners in the "B" Division, brought them together as a true team, and lost only three games ... by a total of only 4 goals, all to A-division teams. There aren't many coaches who can drive such results from a junior-high-age team yet retain such a positive repoire with the kids. Jeff has a natural ability to lead, and the rare gift to challenge his players while making the experience enjoyable. Above all, he cares, and the players know it.

Jeff is a good man, grateful and generous. We paid him a small stipend to cover fuel costs, and he used the money to provide logoed shirts and jackets to the coaches. There aren't many volunteer coaches who would go so far above and beyond.

I have had the pleasure to spend time with Jeff socially and I value his friendship. He has been a catalyst in getting our group of coaches together for evenings out, and we all look forward to the occasions. Jeff has told me about his legal transgressions, which were certainly concerning to me in my position. However, I have come to know Jeff as personable and trustworthy, and he impresses me as a person who would never knowingly harm anyone. I intend to stand by and support Jeff as he goes through the legal process.

Jeff is incredibly dedicated to his team, and we have come to rely on his talent. Our program would suffer without his efforts, the kids would be devastated by the loss, and it would be a shame to lose the commitment he gives to our community.

Sincerely,

Nick Seifert
Park City Youth Lacrosse Organization Board Member and Head Coach
Park City Youth Lacrosse Association Boys Youth Council
CDO/Partner, Fischer Productions

Scott Brzoska
71 Lane Street
Shelton, CT 06484
203-231-2408

November 10, 2011

To The Honorable David O. Carter,

My name is Scott William Brzoska, the younger brother of Jeffrey Wayne Brzoska.  From an early age to even today, I have looked up to Jeff for support, encouragement, and advice.  The situations and topics have changed over the years, but his patience to talk and give his guidance has always been consistent.

As kids growing up, my big brother was my first teacher and coach.  Even though he was 4 grades ahead of me, Jeff enjoyed teaching me math that was above my grade level.  This helped me excel throughout my school years.  I was always the brightest in my grade until Jeff went to college and I had to learn at the pace of my classmates.  Jeff also taught me to play every sport and sometimes was my only fan.  He was the only family member at my first and only high school football scrimmage.  Jeff was also the only person that supported me when I went out for both minor league hockey tryouts.  My big brother and I spoke every day of both minor league hockey tryouts and now after most of my men's league games.

For as long as I can remember, my brother has done his own version of "Toys for Tots" at Christmas time.  Every December visit to Connecticut, we stop at Big Lots and fill 3-5 shopping carts with toys and then donate them to Norwalk Hospital and other local charities in need.  Every year in November, the charities call looking to see if they can count on him for his usual donation.

Last year was a difficult year of health for our mother as she was diagnosed with a rare disease (polymyositis) that put her in a wheelchair and multiple stays in the ICU.  Jeff made several trips to Connecticut to help make the house more wheelchair accessible while also providing moral/emotional support to our family.  Now that our mom is improving and walking short distances, she is demanding Jeff return the house to its normal condition.

For the reasons mentioned above and many reasons not shared in this letter, I asked my big brother to stand at my side on my wedding day and be my best man.  He is still my teacher, coach, best man and hero to me along with being an uncle to my two kids and the godfather of my daughter.

Sincerely,

Scott William Brzoska
Pharmaceutical Sales Specialist
AstraZeneca Pharmaceuticals

Brian Christopher Frederick
332 Aigburth Rd
Baltimore, MD 21286
November 6, 2011

The Honorable David O Carter

I am writing this letter as a personal reference to Mr. Jeff Brzoska.  I have met Jeff
approximately 5-years ago in Park City, Utah through a mutual friend.  My wife and I
have a second home in Park City, and spend 3-4 months a year in the area for holiday and
business purposes.  From my first impression I found Jeff to be a straightforward person
with a good character.  These traits have been strengthened over the years as we have
become great friends.  Jeff has always been there to offer his assistance to my wife in
home renovation projects and ordinary life issues.  In addition, I find Jeff a very giving
person to all the people around him in always offering whatever he has to his friends and
even friends of ours.

Through conversations with friends, I understand Jeff is also valuable to the Park City
community through donation of his time to the Olympic Ski Association and Utah Youth
Lacrosse teams.  Through discussions with Jeff and other community members, I know
for a fact that Jeff is very committed to these projects and is vital to their continued
success.

I understand Jeff may have used some unwise judgment in the past, but know it is not his
typical daily character.  I am sure that Jeff has learned from this situation and know he
will continue to work to play an important role in the Park City community.


Sincerely,

Brian Christopher Frederick
President, Quality Solutions, LLC

From:Wendoh Media               702 384 9009          11/11/2011 17.25     #821 P.001/001

Thursday, October 10, 2011

To the Honorable David O. Carter, regarding my friend, Jeffrey Brzoska:

I'm an only child who comes from a small nuclear family that still resides in New York. Which is why it's comforting to my parents to know that I also have my "Other Family" west of the Mississippi, composed of Jeffrey Brzoska, his girlfriend Lizy Nielsen and the amazing friends I've met through them.

I first met Jeff when I was hired in June of 2005 as the Director of Marketing for Vegas Group Entertainment. I worked alone much of the time, so Jeff's frequent visits to check on his business were welcomed. I was laid off exactly one year later when the company downsized. But, as I later found out, I would have been laid off six months earlier but for Jeff fighting for me, and paying my salary personally. He believed in me and wanted me to be a part of his company. Because he kept me employed, I managed to save up enough money to finally make the leap from part-time columnist to full-time writer, and within a year, editor. Six years later I am senior editor of one of Las Vegas' finest publications. That six months made all the difference to my present and, undoubtedly, my future.

Jeff is unlike anyone I've met in my 10 years in Las Vegas. He is gregarious, warm, loyal and family-oriented. Moving to Park City—a friendly, down to earth place—only brought this out more, and he has settled into that small mountain town in a way I can only hope to some day.

As a landlord, he rents his tenants not only an apartment, but creates for the building a whole neighborhood, complete with cookouts and dogsitting; he built a neighbor's cat its own stairs up to the porch. As a neighbor, he assumes the role of ombudsman. And as a citizen, he volunteers his time freely with two groups who have come to depend greatly on him.

For the past four years, Jeff has volunteered at the Olympic Park with the bobsled and skeleton teams. For the past two years, he has served as the enthusiastic and proud head coach of the Park City boy's 7th and 8th grade lacrosse teams. There, he makes every kid feel like a winner and I'm sure in his eyes, they all are.

Watching Jeff leave Orange County and Las Vegas behind has inspired me to hope that within the next three years I might also leave the city behind and install myself into Park City the way Jeff has. He lets me keep a suitcase at his house and both he and Lizy welcome me there with open arms and hearts. I am so thankful for Jeff and my Other Family. I hope he will be able to continue giving of himself and his time in an interrupted fashion. Park City will be the better for it.

Thank you for your consideration and time,

Sincerely,

Xania V. Woodman
Senior Editor - Vegas Seven Magazine
3070 West Post Rd.
Las Vegas NV 89118

Elizabeth Gwilliam
610 Parkway Drive
Park City, Utah 84098
(435) 640.2870
elizabethgwilliampc@gmail.com

The Honorable David O. Carter,

I met Jeffrey Brzoska in the summer of 2008. We started dating November of the same year. At the beginning of our courtship he was spending half of his time in California and the other half in Utah. As we continued to fall in love it became clear that any future we had would mean a change in lifestyle. Over the three years since then he has spent less and less time in California in an effort to make that transition, preferring the quiet and simplicity of the life we have built in Utah.

During the course of our relationship we have faced many hardships; from crippling disease, my job loss and, most painfully, the passing of my beloved brother. Jeff has been everything to me through these, and other, difficulties. His unwavering love and support through such challenging times is a true testament to his character and the unrivaled kindness in his heart. He not only supports me, he supports his family in dealing with a sudden illness that his mother contracted. He has brought happiness to my family at a time when happiness has been difficult to find. Jeff also saw a call for volunteers in the local newspaper and jumped in with all his natural enthusiasm to coach the youth lacrosse team, spending countless hours in preparation and mentoring for these young boys. They, just as everyone else that comes in contact with Jeff, adore him. The parents have sent many emails thanking him for all of the time and effort he has put into this team. To be a part of Jeff's life is an honor.

I hope to continue, uninterrupted, building a future with Jeff. He has given his whole heart to his family, my family, friends and this town. He is truly a great man.

Sincerely,

Elizabeth Gwilliam

Michelle Huggins
2874 Lucky John Drive
Park City, Utah 84060
435.659.4407
dmichellehuggins@hotmail.com


November 10, 2011

To Whom It May Concern:

I have known Jeffery Brzoska since April 2007. I own Deer Creek Title Insurance and met him via an introduction from Annette Velarde, a business associate working as a loan officer for Wells Fargo Bank. Jeff has been a client and a friend of mine these four years.

For a short period of time I sold not only real-estate related title insurance but Property Casualty as well. Jeff purchased both and auto SUV policies from me as an insurance agent.

I have found Jeff to be reliable, honest and a great asset not only in the business arena, but as a friend too. He is available when there is any kind of project to be undertaken. He has not only helped with various household projects but also has been instrumental by introducing me to others that purchased various insurance products. Jeff also has excellent coaching skills. He works with children in our community coaching for the local La Crosse team.

Jeff is a hard working, dedicated individual that helps out in any capacity that he can. I recognize his many contributions. If he is involved, endeavors are sure to be completed the right way and with elegance. He follows through on his word and is a great sport with a tremendous sense of humor. Jeff is sincere, smart and fun. You are welcome to contact me if I can answer any further questions as to my business relationship or friendship with Mr. Brzoska.


Sincerely,


Michelle Huggins

To: The Honorable David O. Carter

This is a reference for Mr. Jeffery Brzoska

My name is Stuart Epstein and I was a practicing attorney and partner in a law firm in Connecticut. I graduated Yale Law School in 1962 and have known Jeff since he was born. I met him through his father, who was golf professional at the country club that I belonged to. As his parents, Jeff has always been a caring and kind person and always looking to help anyone he could. As a high school athlete, he was a leader and a motivator for the teams which he was part of. As an adult, he took his young enthusiasm and caring to the community, often coaching and helping those in the community with many hours of his time and a great deal of his energy. As a son, Jeff has gone above and beyond to help his parents and his younger sister, who has been handicapped with seizure disorder since she was three years old. Two years ago Jeff's mother was suddenly stricken with an anti immune disease which had her hospitalized for many many months and unable to move her limbs. She has been making steady progress over the past year with a great deal of family support. Jeff gave both his mother and other family members a huge amount of support during these difficult times.

I would hope that Jeff would be able to continue his work in the community as well as be there for support for his family and friends, without any interruption.

Sincerely,

STUART EPSTEIN, ESQ.